Welcome to this session of the Fifth Circuit Court of Appeals. We're pleased to welcome our colleague, Judge Duncan, who I don't believe has sat here in Houston. Have you sat in Houston? Not on a panel. Well, welcome. On a motion, but not on a panel. Thank you. The first case for today is 2018-30008, Graham et al. v. B.P. et al. You may proceed. Good morning. May it please the Court, my name is Billy Gibbons and I represent the 17 D'Amico plaintiffs. First, I wanted to point out that we're not challenging the District Court's case management order. We're not saying that it was entered without authority and we're not saying that we didn't have to follow it. We're simply saying that we made a mistake and we're asking the Court for a chance to correct it. And I've got three main points that I'd like to raise in support of that position. First, the record supports the finding that we attempted to comply with the case management order PTO 63 in good faith. Second, under these circumstances and under the Court's precedent in Thrasher and even in Barrera, which was cited in a Rule 28J letter, it was error for the District Court to dismiss with prejudice in the absence of contumacious conduct. And finally, this case does not fall under Perez, as B.P. suggests. Is it true that your plaintiffs only had one opportunity to comply with PTO 63 before the claims were dismissed? Yes, ma'am. In fact, they were just dismissed. This wasn't even on the radar screen for us until they were dismissed. They hadn't gotten a series of warnings like the Barrera plaintiffs? Correct, Judge. Exactly. And also, I think a related point on Barrera, and I think this is what I would say shows good faith attempt to comply, is that we did every, well, it was 15 claims, 17 plaintiffs, and all 17 plaintiffs filed sworn statements as required by PTO 63. And that was one of the factors in Barrera that the Court cited to show contumacious conduct or a pattern of delay, was that those plaintiffs in Barrera, they never filed the sworn statements. Here we did, and there's an affidavit, and it's in the record at 19980, by the attorney who was handling the case in the District Court, where he does explain that he believed that he was in good faith compliance. He contacted the PSC to try to get some clarification. And look, we were wrong, and we made a mistake, and we should have filed the individual petitions. But you can fix that, and there's no issue that it's futile or anything like that? Correct. It can be fixed, and really, the sworn statements have just as much detail, if not more, than what would be in a petition. And the difference, too, is that we did file petitions before. We just didn't separate them into individual petitions after PTO 63, which is what the District Court wanted us to do. And you didn't file separate lawsuits like they did in Barrera, right? That was an irritating factor, I think. We did file three separate petitions, and they were grouped together. There was a rhyme or reason of why they were grouped together as they were. One was Eastern District of Louisiana plaintiffs, one was Florida plaintiffs, and one was three family members, and then one additional person, a non-family member, put in. So there was a rhyme or reason, and this was just not a situation where there was flouting of the court's authority. And you sought reconsideration? Yes, Your Honor. We did seek reconsideration. And you had your affidavit from your lawyer at that time? Yes, that was attached to the motion for reconsideration. And there's been an issue, BP has raised the issue that we have waived the contumacious conduct argument because we didn't specifically address it or use that term in our motion for reconsideration. But I would like to direct the court to that. The motion itself is at 20177 in the record, and the first sentence says, plaintiff's failure to abide by PTO 63 was unintentional, was not intended to delay this matter in any way. We argue that, and this is another quote, the harshness of a dismissal with prejudice is not warranted when plaintiffs have made an honest effort to comply with the court's ruling and have done so in a timely fashion. And the court has never required any kind of magic words. I think that, in substance, is arguing a lack of contumacious conduct. And I think, you know, what this court has asked us to do in the past is to press the issue in the district court, and we did, and the motion for reconsideration was denied. And then, finally. So, do you believe the district court abused its discretion? It's similar to failing to allow you to mend your pleading if you don't get a second chance. Correct, Your Honor. And that's exactly the argument, is that we think the district court abused its discretion by dismissing with prejudice in the absence of not only a finding of contumacious conduct, but really, I think what the record supports is a finding of good faith attempt, and at has held in John v. Louisiana and in Morris v. Ocean Systems that negligence should not result in a dismissal with prejudice. How can the other plaintiffs know how to do this, and why are some people having trouble if other people are doing it just fine? Well, I think that this really was just a misreading of the order on our part. And I think, and I'm really not going to argue that it was, I mean, we should have done it right. But I think, in our thinking, we saw the order and it said, file individual claims. We really, we just missed the part about split, we thought that by filing lawsuits that were not class actions, because the three that we filed were not class actions, we thought that that was okay. And we really thought that by filing the sworn statements, we were accomplishing what the court intended, which was, give us the specifics about each of these individual claims. And so really, there's no prejudice to the defendants here, because whatever would have been in a petition is in those sworn statements. All of these cases are still stayed, so there's really no reason that we couldn't go back and do what the court wanted us to do in the first place. And in the absence of any kind of intentional flouting of the court's order, we just think that the district court should have given us the opportunity to go back and fix the problem. I think we have your argument. Thank you. Thank you. Good morning, your honors. May it please the court? Go ahead. I'm Heather Lindsay, and I represent over 800 cleanup workers who provided cleanup services in the Florida Panhandle. They provided those services subject to a contract they were required to sign by P2S, a wholly owned subsidiary of FLUR. Those entities, or one of them, is understood to have contracted with BP to allow this to occur. When the cleanup workers performed according to the contract, they were summarily dismissed in September of 2010. This case that I brought, I filed two complaints. I filed them as mass joinder claims in Florida before the orders that are at issue in this appeal. And they were removed. They were transferred to the MDL. They were transferred to the MDL because BP asked for that to occur since, of course, this was a cleanup of BP's oil. They said it would impact them. For purposes of organizing all the claims that had been filed against BP or related to BP's conduct, they wanted these claims over in the MDL. The claims were stayed. The two complaints that I had filed were transferred. They received numbers for the Eastern District of Louisiana. They were subject to a stay, PTO Order 15. That stay was never lifted. The first notice that I understood that they actually were considered to be part of the class action complaint, which I never considered my clients to be a part of, for purposes of the breach of contract claim, was when this happened in 2017, when their claims were summarily dismissed with prejudice and there was no opportunity for me to correct that. I had asked the court to take note that the particular claims that were still at issue in those two mass joinder complaints were simply the breach of contract claims against P2S and Fluor and the third party beneficiary claim to the extent BP is ultimately held responsible for that breach of contract. Without ever having access to the contracts among those entities, there was no way for the potential likelihood of success. My clients had been forced to sign contracts to begin work, but they were denied repeated requests for the copies of their contracts. Under Florida law, as long as I can state with specificity the terms of the contract as to length of employment and amount of pay, I can survive summary judgment. The counsel, did you submit any documentation to support your claimed inability to comply? I did not submit a declaration. That is correct. I provided in an April motion for relief and reconsideration from PTO 63 that it would cost approximately more than $300,000 to comply with the order and that most of the plaintiffs had no means to reimburse the firm. There was no way to explore whether the expense was worth incurring because of the lack of discovery. The burden was excessive on these plaintiffs to pay the filing fee and the only way they could pursue and form a PAPERA status would have been to proceed without a lawyer. It would be inconsistent then, as I asked the court to recognize below, to dismiss them or to require compliance without first allowing them the opportunity to see these contracts. When did you first file that? I filed it on April 12, 2017. It had no supporting evidence? It was just a motion? It was a motion, yes ma'am. It did not contain a declaration. And that was before the dismissal? Yes, ma'am. That was before the dismissal. And then after the dismissal, did you provide any documentation in your reconsideration? I have not provided a declaration swearing to the lack of ability of my firm in Santa Rosa County to fund these cases. Why not? Your Honor, in retrospect, I have no better answer than to say it would seem sufficient for purposes of judicial notice for a two-person firm in Milton, Florida with a population of 10,000 or less. Did you know of the problem? You knew of the problem before the D'Amico people knew about the problem because you had gotten an extension to comply with PTO 63. They had not gotten an extension. You had gotten an extension. And so at the time you were getting an extension, could you say, oh, well, the extension is really going to be futile because this is too expensive for us anyway? I had asked the court to be aware of that futility by virtue of my April 2017 motion. But you knew you were on the verge of being dismissed because you had gotten these warnings. I only received the one warning, Your Honor, and when the case was dismissed, when the claims were dismissed with prejudice, I asked the court to, through my motions pursuant to Rules 59 and 60, to reconsider. And I further requested that the court recognize in the interest of justice that the plaintiffs be allowed a chance to proceed without me. What would be in the interest of justice, which would be a lesser sanction and would not prejudice BP unduly because BP has had the benefit of the state for many years, is simply to allow these plaintiffs the chance to fire my firm and proceed in forma pauperis. That option, there has never been an opportunity for that option. And I would like the opportunity for my clients to be able to do that. And I don't think that's too much of a burden on any party and it actually furthers the interest of justice for indigent people. This ruling punishes indigent people. It does not actually further the interest of justice or protect BP from prejudice. Did you argue that point to the district court? I argued in my motions for reconsideration under Rules 59 and 60 that it was appropriate under Rule 41 for the court to dismiss without prejudice so that more action could be taken. But did you say, because this is specifically the argument you just made, eloquently? Well, thank you, ma'am. I don't recall whether I used those exact words, Your Honor, I'm sorry. What I tried to make clear to the court in my motions was that there was not an opportunity for me to understand fully the impact of this order because P2S and FLOR were never parties before the MDL. They were never the parties that were part of the motion to, for example, receive derivative immunity. They actually were not compliant with the federal response plan and I had evidence of that of record. But I was not authorized to present that evidence because I was told that they're not parties to the MDL. So because of the confusion on my part about the, I'm sorry, I'm out of time, but I have preserved three minutes, but I'll finish my point. Because of my lack of understanding about the potential impact of the prejudice, dismissal with prejudice, I didn't understand what would actually occur. It was my belief that the worst that could happen to my clients was they would no longer be able to pursue BP, but that they would be remanded to Florida to pursue the entities that were not parties to the MDL, but were the parties that had forced my clients to sign a contract and then had breached that contract without offering any damages. Thank you. We have your argument. Thank you, ma'am. Thank you, Your Honor, and may it please the court. The appellants in this case filed multi-plaintiff complaints in 2013 alleging damages from the Deepwater Horizon incident. Those multi-plaintiff complaints were pending when Judge Barbier issued PTO 63 in 2017. Like PTO 60, the nearly identical case management order that this court recently upheld in Barrera and Perez, PTO 63 required all plaintiffs with pending claims to file individual lawsuits, one plaintiff per suit. But appellants did not comply with PTO 63, even though PTO 63 contained numerous warnings that failure to comply would result in dismissal with prejudice, even though PTO 63 came on the heels of PTO 60 and its similar enforcement by Judge Barbier, and even though hundreds of other plaintiffs who had filed multi-plaintiff complaints readily complied with PTO 63 by multi-plaintiff pursuit. As such, Judge Barbier acted well within his discretion in dismissing appellants' multi-plaintiff complaints with prejudice for failure to comply with his order, and his judgment should be affirmed. Counsel, with regard to the D'Amico plaintiffs, are they really similarly situated to Barrera? Because Barrera, they had numerous warnings, and they didn't provide any declarations about the lawyers and what they had tried to do, or they didn't fall on their sword. It seems that they may not be similarly situated. Your Honor, I think they are similarly situated for a couple of reasons. First of all, in Barrera, there actually was only one more warning than there was here. That's significant, and there was no declaration like this declaration. Well, a couple of responses, Your Honor. Also, I want to point out that in this case, PTO 63 also came on the heels of PTO 60. All of these lawyers were aware of PTO 60, what Judge Barbier had required in that, what he had done in complying with that. PTO 63 came two months later. I think that the show cause order that was part of the PTO 60 process, that was a sua sponte decision by Judge Barbier, and it was because the number of B1 claims in that was so enormous. It was five times the number of claims that were in the PTO 63 bundle. I think it's well within Judge Barbier's discretion to determine that after he had already done PTO 60 and issued a compliance order, and had a smaller docket of B3 claims, that he didn't have to issue this sua sponte intermediate show cause order. Do you know of some authority for that? Normally, you have to give people a warning that you're going to give them the ultimate sanctioned dismissal with prejudice. Well, and PTO 63 contained four different warnings. Two were explicit that said, B3 plaintiffs who fail to comply with the above requirements will have their claims dismissed with prejudice without further notice. And then later, this court orders the designated plaintiffs to act in compliance with this order or face dismissal of their claims with prejudice without further notice. And then there's two other points in PTO 63 that talks about how plaintiffs who do comply will be subject to further proceedings. These are at paragraph 6B2, page 7, paragraph 8, paragraph 10. So I don't think that given particularly these special deference accorded to MDL courts in overseeing complex litigation, as Barrera put it, and this I think is certainly one of if not the most complex MDLs there has ever been, and Judge Barbier is trying to get his trains running on time, that in this context when he's already issued PTO 60, he's already issued the compliance order for PTO 60, PTO 63 twice references PTO 60 and it talks about how there were similar requirements in PTO 60. And then issues this PTO 63 with two explicit warnings and then two additional statements about what's going to happen if you do comply. I do think that it is not an abuse of discretion at that point for him not to give a sua sponte show cause order and to require plaintiffs who had filed multi-plaintiff complaints and there's no dispute here at this point that all of the plaintiffs here qualify for that. It's just that the sua sponte show cause order was integral to the Barrera opinion. Well, Your Honor, I don't think that it makes any difference here, though, because you've got that abuse of discretion standard and you've got the PTO 60 that preceded this, you've got the compliance order, and you've got a PTO 63 that is essentially identical to it. Why isn't dismissal without prejudice a lesser sanction? It should have been considered. Well, Your Honor, because I think that it's very hard to enforce deadlines in an MDL where you've got a lot going on if you don't have the ability to meaningfully enforce them. And I'll use an example here. Reinstating the claims by the plaintiffs here would literally double the size of the B3 docket that is now before Judge Barbier. And not only would it double it, but in the last year or two, he's issued additional orders about those remaining claims requiring additional information, getting additional medical information, making sure there aren't any fraudulent claims. He issued PTO 66, which applied to what remained of the post-PTO 63 claims. He's issued a compliance order. That took about a year. Mr. Hicks, when you say it would double the amount of claimants, are you referring to both groups before us here, D'Amico and Lindsey? That's correct. There were about 900 plaintiffs that were remaining after PTO 63's compliance order. And there are about over 800 plaintiffs who are now seeking to be reinstated here. So I think that actually is an extraordinary imposition on Judge Barbier, but it's also an imposition, if I can push back on this lack of prejudice point, not that there needs to be any, because I think Barrera said very clearly that there don't need to be these But also, the idea that there's not prejudice to BP or to other plaintiffs, I think is just not correct. BP is trying to resolve these claims, to bring them to a close, and this is part of that process. And to put 800 or so plaintiffs back in is not only detrimental to BP's efforts to do so, it's awfully detrimental to the plaintiffs who complied with PTO 63 and have been moved along in this process. And now, if these claims are reinstated, everything has to stop, everything has to start over, all of the calculus and analysis that goes into resolving these claims has to be rethought, redone, reengineered by the district court. There's a lot that goes on. And this is just one small component of the MDL. This is just the B3 medical personal injury claims. As this court is certainly well aware, there's a whole lot more that's happening in the MDL that Judge Barbier is overseeing. And so, I think that all just kind of goes back to why it is within his discretion, after he has issued PTO 60 and a compliance order, and then PTO 63 with multiple warnings, to actually stay true to his word and dismiss with prejudice. I didn't hear your response. Maybe you didn't have a chance to give it. To Judge Elrod's point about, doesn't the presence of documentation for the D'Amico plaintiffs distinguish them from the Barrera case? Your Honor, I don't think it does for a couple reasons. Number one, as I read Barrera, the documentation there was simply trying to explain why they were trying to comply. And I think that actually makes Barrera actually an even, this is an easier case than Barrera because in Barrera, the documentation was shown to be trying to comply. No, they actually didn't have documentation to show they've been trying to comply. They just had the lawyer saying, we're trying to comply. And one of the issues in the Barrera case was they didn't document that they had spent so many hours trying to do it, and it would take so many more hours. Those were the kinds of, if you listen to the oral argument of the Barrera case, those are the questions that the court asked, and that was the problem, is they never documented or quantified their efforts to try. And that was a big part of the case. Yes, and just to go further about the actual affidavit here, two responses. Number one, when there's the ability to seek clarification from the court, if you really don't think that an order applies to you, and just as a side note, I don't find, I think it's a very hard argument to say that PTO 63 on its face did not apply here, given the multi-plaintiff complaints, but if there was any uncertainty about it, I think it is incumbent upon counsel to seek clarification from the court and not from the plaintiff's steering committee. But then going to the actual affidavit, if you actually take a look at the affidavit, and I would direct your attention to paragraph six, which is kind of where the rubber meets the road as to who exactly gave what guidance, and this is at 19980 of the record, it's awfully vague when you get to the final analysis of exactly who said what about what they could do. It all of a sudden switches from the active voice to the passive voice. It talks about focusing on individual clients, and so I don't think that there's actually, I don't think the affidavit says quite what the plaintiffs wanted to be saying, and I think that underscores that it's maybe a dangerous road to go down when you can excuse, plaintiffs call it negligence, I don't know if I would call it negligence, given how clear PTO 63 was on its face, and how every other plaintiff seemed to be able to comply with it and file individual complaints. But I think that also underscores that you have a problem if you start getting into deciding who made a mistake and is that enough to excuse them, because I could certainly see if a district court is saying, well I don't think it's negligence, well then you're going to have appeals to this court saying was it negligence or was it not, and in the meantime the MDL court is trying to move things along as it is here. So I think that particularly in circumstances like this, where you've got the abuse of discretion standard, where you've got special deference to an MDL court that is trying to keep the trains running on time and has issued a nearly identical order with warnings, has issued a compliance order with that, and then has issued a nearly identical PTO 63 with multiple warnings that clearly apply. Again, I don't think there's any dispute here that it applies to all the plaintiffs here. Could you address the Lindsay plaintiff's arguments, the two basic arguments, one that they're not similarly situated because their cases are these different kind of contract cases, and their second argument is that it's cost prohibitive for the actions to take place because they would cost in excess of $300,000. Can you please address those arguments? Sure. On the first point, that is squarely foreclosed by PTO 63. PTO 63 says in paragraph 6 that it applies to all plaintiffs who have timely filed a claim in the B3 pleading bundle. Then it goes on to say in paragraph 1, the B3 bundle includes, and there's three different descriptions, all of which encompass the claims that the Lindsay plaintiffs have brought. All claims related to post-explosion cleanup. All claims of any type relating to post-explosion cleanup efforts, including asserted against defendants not named in the B1 master complaint. So that includes the non-BP plaintiffs, the defendants, although BP was also named as a defendant. And three, contract claims related to the response efforts. So that squarely encompasses the Lindsay plaintiffs' claims. In fact, if you go and look, and this is at 1094 of the record, the very first cause of action in their complaints is a personal injury claim based on exposure to hazardous substances. So even putting aside this contract claim notion, which also falls within PTO 63, their complaint falls within PTO 63. But then I think the second question was about the prohibitive cost. There are many ways to, first of all, I don't think that stopped the court in Barrera or Perez. I mean, the same arguments could have been made there. But I think also... But I don't think they were. Well, I think that it's a similar analysis in the sense that there were 114 plaintiffs or so in the Barrera case. But I think the more important point is that they never sought to... PTO 63 actually contains language in a footnote explaining how to file a lawsuit on your own, how to file for IFP status, how to do all of these things. And there wasn't even an attempt to do so by any of the Lindsay plaintiffs. And in fact, there was never an attempt by the Lindsay plaintiffs, really, until this court to claim that PTO 63 never even applied to them. Because the motion for relief that they filed on the day of the deadline, it assumes that PTO 63 applies to them. And so the principal argument in this court that they're making that, well, we just didn't know that PTO 63 applied to us, I think is foreclosed by the plain language of PTO 63, but it's also fatally undercut by their own motion to the court, which assumed that it would apply to them. Did they argue that it was cost prohibitive to the district court, in your opinion? I believe in one of their several pleadings, possibly one of their motions for reconsideration, they might have said, they might have thrown that in as one of their arguments. I can't recall off the top of my head. But there's a reason why Judge Barbier issued this particular order, just as he did with PTO 60, which is to know who still has claims, who wants to pursue them, and what exactly those claims are. And as the Barrera Court pointed out, there have been instances of fraud in this MDL. And one way to winnow out claims that are real or not real, particularly when you've got an 800-person complaint, is to require people to file individual complaints and to say exactly what their claims are. Based upon these declarations and things that we now have, the D'Amico plaintiffs filed, these are not in that fraudulent camp, are they? I mean, there are actual real people with real claims that they've sworn to, is that correct? Well, Your Honor, I don't know the answer to that for the 800 Lindsay plaintiffs. I have specifically tied the question to the D'Amico plaintiffs. Oh, I'm sorry. So for the D'Amico plaintiffs, my understanding is, yes, they did file the So, you know, I would suppose that there's no reason for thinking that there are fraudulent claims there. But again, you know, it's a question of whether Judge Barbier has the discretion to actually enforce the order that says, you know, if you filed a multi-plaintiff complaint, which the D'Amico plaintiffs indisputably did, you have to file an individual lawsuit, one plaintiff per suit, and then, you know, we're going to have further proceedings on those. And those further proceedings have taken place. And it took a year for Judge Barbier to process all of the remaining claims that were post-PTO 63 using PTO 66. And he's now ready to move on to, you know, what's after PTO 66. And so to reinstate plaintiffs at this point, you know, really gums up the works in the MDL, which I think is contrary to the entire purpose of giving the MDL court the discretion, the special deference, as Barrera said, to be able to issue case management orders and to be able to enforce those case management orders, including with dismissal with prejudice. Thank you. I think we have your argument. Thank you. Your Honor, just a couple of points. There were approximately 183 cases on the, you know, initial dismissal order. So, you know, I think that is at least some indication that, you know, BP may criticize the affidavit that we filed, but at least it shows an effort that we made to try to understand it, to try to comply. And this did not make it into the record on this case, but in the MDL record itself, at Record Document 22866, was a motion for a status conference by another defendant who we know was trying to seek some clarification of the order. That was denied at Record Document 22922. And I mean, it's also not in the record, but I mean, we did make a phone call to the law clerk and were, I think, appropriately told that the court does not give legal advice. We can't consider that because it's not in the record. The other is in the MDL record. Could you respond to the argument that Mr. Hicks makes that if plaintiffs are reinstated at this point, it's going to gum up the works because the ship has moved on to, you know, BTO66? What's your response? Well, I mean, the reality is that these cases have been stayed for eight years and they're still stayed. There are no trial dates set. So while there may be a few additional filings that we have to make, we're only 17 cases. And so I don't think that those 17 cases adding to the hundreds of cases that are out there are, you know, would gum up the works to the extent that, you know, it couldn't be, you know, it couldn't be caught up and corrected. And also, and I understand that there is deference and additional discretion in MDL cases, but in all of the cases, especially that have dealt with this BP case, there's always been something more than just, you know, a failure to comply or a mistake. And here we did try. I think that the record does show that there was an attempt because really, if we had not filed the sworn statements, I think we would be in a different boat. But here it does show an attempt to comply. And really, I think the substance of what was done is in the spirit of the order. And we're really here, I believe, more on a technicality. And that's why we think it was abuse of discretion and that we should have been given the opportunity, at a minimum, a dismissal without prejudice so that we could have gone in and correct what I think is really more of a technical issue than anything else. And finally, just the one last point is that PTO 63, I don't think can be, you know, characterized as BP does, as the warning to us. That was the one order and that was it. And we made a mistake on that and that was it. And we would like the opportunity to correct it. Thank you. Thank you. I'd like to briefly respond to his argument as well as make sure I at least mention the As far as the 800 claims being reinstated gumming up the works, it's very unlikely that it would. But we don't know because we don't have the contracts. My belief is that BP would have some indemnity provision to protect it if PTOS and FLUOR are breaching the federal response plan and exposing the workers to being poisoned. So if there is a breach of contract claim that my clients can prove, which we have asserted enough to survive summary judgment in Florida to do that, then who is going to be ultimately responsible to pay damages? We don't know without their contracts, but we'd like an opportunity to be able to pursue that against PTOS and FLUOR. So if the remedy to further the interest of justice is to eliminate BP from the case, then let BP be dismissed so that these plaintiffs can be returned to the Florida Northern District Court to pursue PTOS and FLUOR because they're the entities that contracted with my clients and fired them summarily after they had performed. Would they be returned to Florida automatically if BP is dismissed? The process that we were assured would occur was that the claims that we had filed in Florida Northern District Court, which were transferred, which did receive new numbers for the EDLA, as soon as claims were resolved, at some point they would be remanded. We've seen that with the other kinds of claims that are proceeding, that when the claims arise in the Northern District of Florida, they've been returned. My firm represents people who are sick whose claims have been returned to the Northern District of Florida for purposes of discovery, and it's ongoing now against BP. So I do believe that if the claims arise in the Northern District of Florida, they will be returned there, and that's based on what's happening as to personal injury clients who are pursuing claims against BP. One of the comments made by opposing counsel that I would like to also disagree with is we did not know that these lawsuits based on breach of contract were either B1 or B3 claims. B3 claims were personal injury claims. My client's personal injury claims have already been addressed through the other processes. The breach of contract claim was not understood to be a B1 claim subject to PTO 60 because they were not vehicles of opportunity plaintiffs. They were cleanup workers who had contracts on the beach, contracts the existence of which had been denied by the entities that employed them. And so I also would like to comment briefly that the Florida Constitution protects access to justice. These claims arose in Florida by Florida workers, and they should have an opportunity to be heard. The summary dismissal with prejudice prevents them from being heard. And regardless of the impact to BP, there should at least be some reference to the ability of these plaintiffs to have access to justice in Florida. Thank you, Your Honors. Thank you. We have your argument. This case is hereby submitted.